## Webster's Estate.

Argued January 9, 1934.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

234

*W. Albert Ramey,* with him *E. Russell Shockley,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellant.

*John J. Pentz,* with him *W. C. Pentz* and *Ross H. Pentz,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, March 19, 1934:

The important matter here at issue is the correctness of the finding of the court below of the value of a decedent's real estate for inheritance tax purposes. The Commonwealth appeals.

There are some minor questions to be disposed of. In connection with them we may observe that the State ought not to be too technical in tax matters, particularly under today's conditions, when high taxes dismay the living and follow the dead into their graves.

The writer of the Commonwealth's brief takes the position, as he did on oral argument, that the appeal from the appraisement was too late, that the first appeal paper filed was not sufficiently specific to meet the requirements of the Act of June 22, 1931, P. L. 689, 72 P. S., section 2327, and that the appeal being as to the real estate and being by the widow as executrix, and not individually, she was without standing to take it, although all the real estate except one piece was devised to her individually.

When the real situation as to the appeal is brought into view it is apparent that it was not too late or want-

ing in specificness. The auditor general appointed an appraiser on June 22, 1932. The appraiser forwarded his report to the auditor general, who referred it to a special appraiser. The first appraiser left his original appraisement in the office of the register of wills on August 30, 1932. It was not marked filed until November 19, 1932. The register testified that under the practice in his office an appraisement does not become part of his records until after it is approved by the auditor general and marked filed; that until it is so approved it lies in the appraiser's file; that he, the register, has no control over it then, and that the appraiser can withdraw it at any time. Under the practice which prevailed, the public recording of the appraisement dated from the day it was marked filed by the register in his office and the appeal time ran from then. The second appeal was, therefore, in time.

The first appeal filed September 13, 1932, apparently lodged because of something said by the appraiser or the register to the effect that an appraisement had been made, was a somewhat informal paper, but it is not denied that the second one filed on December 7, 1932, within the statutory time after the appraisement was marked filed, is sufficiently specific.

As to the appeal being invalid because taken by the widow as executrix and not in her own right, it is sufficient to say that no such question was raised in the court below. No mention was made of it while the case was pending nor until after it had been heard and decided. This being so, we will not consider it: Hurt v. Fuller Canneries Co., 263 Pa. 238, 241; Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468, 479.

On the merits the Commonwealth's contention is that the testimony of the real estate experts called by the appellee was not sufficient to justify the lower court in setting aside the appraisement made by the state appraiser; that the appraisals of those experts were based on erroneous premises and had no legal validity; that

actual value, not market value as used by those witnesses, is the proper basis for appraisement.

The line of division between actual value and market value is difficult to chart, at least under present conditions, where forecasting the financial future as it may affect the present worth of real estate may be part of the problem. Summing up the testimony presented to it, the court below says the investigation made by the state appraisers in order to determine the value of the real estate was very limited, that from their evidence it is difficult to determine whether the valuation they fixed was based upon the fair market value of the property at the time of the testator's death or partly on present market value. The court reached the conclusion, weighing the testimony on both sides of the controversy, that there was not sufficient investigation by the state appraisers to warrant their opinions prevailing and that the views of the expert witnesses called by the estate were the more convincing and reliable.

It is manifest to all that we cannot know the values of real estate throughout the Commonwealth. Unless there is some mistake in applying the law in appraisements, in the very nature of things we must rely upon the judgments of the courts of first instance in fixing values. The inheritance tax statutes of June 20, 1919, P. L. 521, and May 15, 1925, P. L. 806, 72 P. S., section 2302, provide that the taxes shall be imposed upon the "clear value of the property subject to the tax" and indicate how the clear value is to be arrived at by certain deductions from the "gross" value. Speaking through the present Chief Justice in Smith's Est. (No. 1), 261 Pa. 51, 54, where we were construing an earlier inheritance tax act, we said: "While the price property would bring at public sale is a proper criterion of value, it does not necessarily follow that such standard is the only evidence to be considered in determining the 'clear value' for the purpose of assessment of collateral inheritance tax, nor is the appraiser prevented from tak-

ing into consideration other evidence tending to legitimately affect the value of the land. The act requires the 'value' to be ascertained, not necessarily the public sale value." In Clabby's Est., 308 Pa. 287, we pointed out that appeals from inheritance taxes are analogous to appeals from the action of county commissioners sitting as a board of revision. In our latest pronouncement on the subject of appeals from appraisements of real estate for general tax purposes, we said: "In an appeal from an assessment for taxes, the findings of fact of the court below have great force, and these findings will not be set aside unless clear error is made to appear......While the weight of the evidence is before this court, findings of the court below that are based on the weight of evidence, will not be disturbed": Appeal of Westbury Apartments, 314 Pa. 130. See also Appeal of 222 South Nineteenth Street Corporation, 314 Pa. 132.

We have not been convinced that the conclusion reached by the court below was an erroneous one, therefore

The order is affirmed at appellant's cost.